UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BAIRD,<br><br>        Plaintiff,<br><br>    v.<br><br>OFFICE DEPOT,<br><br>        Defendant.<br>_____/ | No. C-12-6316 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 73)** |

        Plaintiff Michael Baird ("Plaintiff") filed suit against defendant Office Depot, Inc. ("Defendant"), asserting claims for employment discrimination. Currently pending before the Court is Defendant's motion for summary judgment as to all claims. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part the motion for summary judgment.

        Plaintiff's claims stem from two theories (1) a failure to promote Plaintiff on at least three occasions and (2) an incident on September 22, 2011 where Plaintiff was denied a reasonable accommodation during an overnight shift that required heavy lifting. The motion is granted as to Plaintiff's claims arising from the alleged failures to promote. The motion is also granted as to all federal claims arising out of the incident on September 22, 2011, including a failure to provide a reasonable accommodation in violation of the American Disabilities Act ("ADA") and discrimination based on race and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Additionally, the motion is granted as to the claim for a violation of public policy as

set forth in the California's Fair Employment and Housing Act ("FEHA") and a claim for punitive damages.

The motion is denied as to state law claims under the FEHA arising from the September 22, 2011 incident including discrimination based on race (Count Four), retaliation (Count Five), failure to accommodate (Count Six), failure to engage in the interactive process (Count Seven), and failure to take reasonable steps to prevent discrimination and retaliation (Count Eight).

## I.   FACTUAL & PROCEDURAL BACKGROUND

In the Complaint and in deposition, Plaintiff alleges as follows. Plaintiff began working for Office Depot in May 2003 and became a Department Manager by July 2012. *See* Complaint ¶ 3 (Docket No. 1). While working at Office Depot, Plaintiff applied to become an Assistant Store Manager. He was not selected for any such position because of his race. Plaintiff's supervisor, Jose Velez, would hire Hispanics and not Caucasians such as Plaintiff, even if they were less qualified. *See* Compl. ¶¶ 3-8. In addition, Plaintiff was not promoted because he had previously complained about unlawful discrimination in the store (*e.g.*, Plaintiff had complained that inappropriate comments were made about Chinese customers). *See id.* ¶¶ 6-7. Specifically, on August 5, 2011, Plaintiff was called to a meeting with Ms. Lori Hale, the previous Regional Human Resources Director, and Mr. Emanuel Frendo, the Regional Director, where Plaintiff was told that if he filed any more complaints about employees at the store, he would be terminated. *See* Rogers Declaration in Opp. to Def.'s Motion, Ex. 1 Baird Deposition at 79:9-11 (Docket No. 82) ("Baird Depo.").

Plaintiff also alleges that Defendant failed to provide him with a reasonable accommodation for his disability and did so based on his race and in retaliation for his making complaints. *See* Compl. ¶ 13. Specifically, Plaintiff alleges that on August 1, 2011, he suffered an injury to his left knee which resulted in the following work restrictions: no bending, stooping, or climbing ladders. *See id.* ¶ 9

According to Plaintiff, upon being instructed to work an overnight shift on September 22, 2011, he alerted Mr. Velez of his injury and work restrictions. Baird Depo. at 96:18-21. Because the overnight shift required moving merchandise so that the floors could be waxed and stripped, Plaintiff told Mr. Velez that he felt like he might be reinjured if he worked the shift. *Id.* at 96:20-21,

2

97:7-12. Plaintiff alleges Mr. Velez "started screaming and yelling" and told Plaintiff he would call Mr. Frendo to find out what could be done, which Plaintiff believed Mr. Velez had done later that day. *Id.* at 96:22-24. Plaintiff alleges that after Mr. Velez spoke to Mr. Frendo, Mr. Velez told Plaintiff that "[i]f you don't show up for your shift, you will be written up and fired for this." *Id.* at 96:25-97, 109:7-9. Plaintiff felt it was unfair that he had to work yet another overnight shift. *Id.* at 96:15-16. It is undisputed that Office Depot assigned two other employees to work the overnight shift with Plaintiff. *Id.* at 111:17-23; *see also* Brewer Decl. in Support of Motion, Ex. C Velez Deposition at 33:15-17 ("Velez Depo."). Mr. Hoa Du was scheduled to assist Plaintiff with moving the merchandise. Baird Depo. at 111:17-23. However, according to Plaintiff, Ms. Jennifer Rivera was assigned to work the shift but only tasked with performing price changes throughout the store. *Id.* As a result of working the shift without a reasonable accommodation, Plaintiff injured his back. *See* Compl. ¶¶ 9-11; Baird Depo. at 98:4-25.

Based on, *inter alia*, the above allegations, Mr. Baird has asserted the following claims:

(1) Race discrimination in violation of Title VII and the FEHA (Counts One & Four);

(2) Retaliation in violation of Title VII and the FEHA (Counts Two & Five);

(3) Failure to provide a reasonable accommodation in violation of the ADA and the FEHA (Counts Three & Six);

(4) Failure to engage in a good faith interactive process regarding accommodation in violation of the FEHA (Count Seven);

(5) Failure to take all reasonable steps to prevent discrimination and retaliation in violation of the FEHA (Count Eight); and

(6) Violation of public policy of the FEHA (Count Nine).

In response to the complaint, Office Depot originally asserted forty-six affirmative defenses. Following the Court's order granting Plaintiff's motion for partial summary judgment (Docket No. 62) and the Court's subsequent order on Defendant's offer of proof to revive the third defense (Docket No. 71), three affirmative defenses survive including (3) Mr. Baird failed to exhaust administrative remedies available to him; (13) Unclean hands on the part of Mr. Baird extinguishes

his right to any relief; (23) After-acquired evidence bars Mr. Baird's claim on liability or damages or reduces such damages.

## II. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The rule also provides that "[a] party asserting that a fact cannot be or is not genuinely disputed must support the assertion by [*e.g.*] citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

B. Plaintiff's Title VII, ADA, and Failure to Promote Claims are Time Barred

Before filing a civil suit under Title VII or the ADA, a plaintiff "must file a charge within the statutory time period and serve notice upon the person against whom the charge is made." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (citing 42 U.S.C. § 2000e-5(e)); *see also Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (citing 42 U.S.C. § 12117(a)). "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the [Equal Employment Opportunity Commission ("EEOC")] within 300 days of the employment practice; in all other States, the charge must be filed within 180 days," otherwise the claims are time barred. *Nat'l R.R. Passenger Corp.,* 536 U.S. at 109. Furthermore, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in

4

timely filed charges." *Id.* at 102.  Under the FEHA, claims must be filed with the Department of Fair Employment and Housing ("DFEH") within one year prior to filing of a complaint.  *See* Cal. Gov. Code § 12960(d).

Plaintiff filed the charge of discrimination with the EEOC and DFEH ("Charge") on July 25, 2012.  *See* Compl. at Ex. 1.  Plaintiff admits "[s]ince Defendant canceled all of the promotional opportunities within a year of the filing of the EEOC complaint, Plaintiff concedes there was no statutory claim for race discrimination for failure to promote during the statutory period." Plaintiff's Opposition to Motion ("Opp.") at 11 (Docket No. 81).  To the extent any of the other claims, including race discrimination or retaliation under Title VII and the FEHA, are premised upon alleged failures to promote, the Court finds the claims are time barred because all such alleged denials fall outside the relevant statutory periods.  Similarly, the Court finds all Title VII and ADA claims arising out the failure to accommodate on September 22, 2011 untimely because the incident occurred 307 days prior to the Charge being filed on July 25, 2012.[1]  Compl. ¶ 10.

Accordingly, the Court grants summary judgment against all claims that relate to Plaintiff's failure to promote including race discrimination and retaliation in violation of Title VII and the FEHA (Counts One, Two, Four, and Five).  The Court also grants judgment against all federal claims that relate to the September 22, 2011 failure to accommodate including race discrimination and retaliation in violation of Title VII (Counts One and Two) and failure to provide accommodation in violation of the ADA (Count Three).  This leaves his FEHA based claims relating to the September 22, 2011 incident.

///

///

---

[1] The Court rejects Plaintiff's reliance on *Fed. Exp. Corp. v. Holowecki* to argue the date and substance of Plaintiff's initial communication with the EEOC determines when a claim is filed.  *See Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389 (2008).  In *Holowecki*, the Supreme Court considered whether an intake questionnaire could be construed as a charge, explicitly limiting its holding to claims asserted under the Age Discrimination in Employment Act of 1967 ("ADEA").  *Id.* at 393, 402.  It did not hold such a filing constitutes a charge under the Title VII or the ADA.  Moreover, even if the Court was to be persuaded by Plaintiff's argument, Plaintiff filed his intake questionnaire on July 22, 2012, which is still five days outside the statutory period.  *See* Baird Decl., Ex. 2 (Docket No. 83).

C. <u>Plaintiff's Failure to Promote and Failure to Engage in the Interactive Process Claims Do Not Exceed the Scope of the Charge of Discrimination</u>

Defendant argues Plaintiff failed to exhaust his administrative remedies on the claims for the failure to accommodate and failure to engage in the interactive process because those claims exceed the scope of the Charge. Under FEHA, "exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." *Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607 (App. 6th Dist. 1995); *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) ("In order to establish subject matter jurisdiction over her Title VII claim, Plaintiff was required to exhaust her administrative remedies."). In order to exhaust his administrative remedies under the FEHA or Title VII, a plaintiff must timely file a charge of discrimination and obtain a right to sue letter from the DFEH and the EEOC. *Id.* "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrow[ing] the issues for prompt adjudication and decision." *Maui Police Dep't*, 276 F.3d at 1099; *see also Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1133 n. 6 (9th Cir. 2001) (". . . decisions interpreting federal anti-discrimination laws are relevant in interpreting the FEHA's similar provisions.").

In deciding whether a civil claim exceeds the scope of a charge of discrimination courts consider whether the claim is like or reasonably related to the charge and whether the claim would "reasonably have been uncovered in an investigation of the charges that were made." *Okoli*, 36 Cal. App. 4th at 1617. As the court explained in *Maui Police Dep't*, 276 F.3d at 1100, "Allegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." The language of the EEOC charges should be construed with the "utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Id*.

The Ninth Circuit has offered several factors to consider when deciding whether a claim has been exhausted, including "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Id.* Furthermore, courts should only look to the intake questionnaire in deciding whether a claim exceeds the scope of the charge of discrimination

6

where there is evidence of agency negligence in drafting the charge. *Id.* at 1102 ("If the charge itself is deficient in recording her theory of the case due to the negligence of an agency representative who completes the charge form, then the plaintiff may present her pre-complaint questionnaire as evidence that her claim for relief was properly exhausted.").

In construing the Charge liberally, the Court finds Plaintiff's failure to accommodate and failure to engage claims under the FEHA do not exceed its scope. Plaintiff checked the boxes indicating discrimination based on race, retaliation, and disability. *See* Compl. Ex. 1. Plaintiff left the date blank for when the earliest act of discrimination took place and provided July 25, 2012 for the latest date. *Id.* Plaintiff also checked the box for continuing action which would put Defendant on notice of various claims. *Id.* The factual allegations portion of the Charge stated, "Mr. Velez has subjected me to an increased hostile work environment after informing him of work restrictions I received subsequent to a knee and back injury." *Id.* The factual allegations specifically stated that Plaintiff had work restrictions in place due to a knee and back injury, to which he alerted his supervisor, and which resulted in a hostile work environment.

These allegations are reasonably related to the failure to accommodate and failure to engage claims; the stated fact that Mr. Baird had alerted his supervisor to his work restrictions would have reasonably led to an investigation into the same facts which undergird a claim of failure to accommodate. Thus, such a claim would "reasonably have been uncovered in an investigation of the charges that were made." *Okoli*, 36 Cal. App. 4th at 1617.

Defendant argues that a failure to accommodate and a failure to engage claim are separate unlawful acts under the FEHA, and thus they must be particularly alleged in the Charge. While courts may look to the elements of a civil claim in deciding whether a plaintiff exhausted his administrative remedies, it is for the larger purpose of deciding whether the claims are like or reasonably related and would reasonably have been uncovered in an investigation of the charges. *See e.g. Zapponi v. CSK Auto, Inc.*, C02-0536 TEH, 2002 WL 31750219 (N.D. Cal. Dec. 4, 2002) ("Given the relationship between the retaliation claim and the other allegations, it is reasonable to assume that an investigation into the harassment and discrimination claims would alert Defendant to Plaintiff's allegation that she was denied a promotion in retaliation for speaking out about

Defendant's unlawful conduct."). Courts generally find judicial pleadings outside the scope of an administrative charge where a plaintiff alleges an entirely different theory of discrimination. *See e.g. Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1122 (Ct. App. 1989) (Court found plaintiff failed to exhaust age discrimination claim because charge alleged only gender discrimination based on unequal pay.); *see e.g. Okoli*, 36 Cal. App. 4th at 1613 (Court found failure to exhaust retaliation claim where the retaliatory act occurred subsequent to the charge, which only alleged race and national origin discrimination.); *see e.g. Pejic v. Hughes Helicopters, Inc.,* 840 F.2d 667, 675 (9th Cir. 1988) (Court found plaintiff's ADEA claim time barred because it was not reasonably related to his charges of sex and national origin discrimination.). But where, as here, there is a reasonable relationship between the claims of failure to accommodate and disability discrimination, particularly in view of the factual reference to Plaintiff's announced work restrictions, the fact that there are two distinct legal theories is not dispositive.

Defendant cites no Ninth Circuit or California authority to support its argument to the contrary. Instead, they cite Seventh Circuit and Sixth Circuit authorities. These cases are distinguishable. Specifically, the Seventh Circuit found a failure to accommodate claim was not reasonably expected to develop from an EEOC charge where the employee alleged she was terminated on the basis of her disability. *See Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 897 (7th Cir. 1999). There, plaintiff's failure to accommodate claims – based on the alleged failure to provide a suitable desk chair, dimmer lighting, and that plaintiff stopped parking in the disability parking spaces because she was told she did not belong there – were not reasonably related to her termination of employment allegedly based on disability. *Id.* at 898. The Seventh Circuit in that case stated "we fail to understand how she could expect that her claim that she suffered from inadequate working conditions would develop from the investigation of the reasons for her discharge." *Id.* While an investigation into a wrongful discharge would not likely lead to an investigation into a failure to provide a reasonable accommodation, the allegation here that work restrictions based on a knee and back injury resulted in a hostile work environment would likely lead to an investigation into a failure to provide reasonable accommodation and a failure to engage in the interactive process claims.

Similarly, the Sixth Circuit found a failure to provide a reasonable accommodation claim exceeded the scope of the charge which only included a wrongful termination based on disability discrimination claim. *Jones v. Sumser Ret. Vill.,* 209 F.3d 851 (6th Cir. 2000). There, the court stated "nothing in the charge pointed to any claim other than an improper refusal to keep Jones's job open while she recovered [from her disability]." *Id.* at 853. The Sixth Circuit found that the facts related to the termination – including employee's disability, absence from work due to the disability, the employer's policy on permissible leave, reasons for termination, and the employees ability to return to work – were far different than the facts related to plaintiff's reasonable accommodation requiring assistance with washing dishes. *Id.* at 854 n. 1. Moreover, the date provided in the charge of discrimination for earliest date of discrimination, was the date plaintiff was terminated, occurring almost a month after the last failure to accommodate claim. *Id.* at 853-54. In contrast, Plaintiff here left the earliest date of discrimination blank and selected the box for continuing violations. Moreover, Plaintiff's facts underlying the failure to accommodate and failure to engage claims concerning the September 22, 2011 incident are not "far different" from those related to the Charge.

Furthermore, Plaintiff's allegations contained in the EEOC intake questionnaire ("Intake") remove any doubt that Plaintiff has exhausted his failure to accommodate and failure to engage administrative claims prior to filing a civil suit.[2] *See* Baird Decl. Ex. 2 at 10. The Intake completed

---

[2] Defendant objects to the Intake's admissibility because Plaintiff has introduced the document after discovery has closed and fails to show how the failure to disclose or to supplement an earlier discovery response "was substantially justified or is harmless." Fed. R. Civ. Pro. 37(c)(1). The objection is overruled. Defendant does not contest the authenticity of the Intake. There is no prejudice; any discovery which Defendant claims it has been denied because of Plaintiff's failure to timely disclose this document would not negate the existence of the form and its content. Its relevance lies in its content, not Plaintiff's intent behind it. Morever, Plaintiff presented evidence he did not have possession of the form which was in the custody of the EEOC until recently. As to Defendant's objection to all statements in the Intake regarding scheduling, raises, and hiring decisions of Hispanic and non-Hispanic employees, as well as the races of other employees, these statements are not material to the motion for summary judgment.

Furthermore, as to all other evidentiary objections raised by either party, the evidence is not material to the motion for summary judgment.

Plaintiff requests leave to file a supplemental declaration in support of its opposition and attaches the supplemental declaration as exhibit one. *See* Docket No. 88. Defendant objects to the motion for leave, arguing no new issues were raised in reply. *See* Docket No. 89. According to Defendant, it only responded in reply to the new issue raised in opposition, *i.e.*, Plaintiff's reliance on the intake questionnaire. Having considered the parties' arguments and accompanying

1 by Plaintiff prior to the EEOC's drafting of the formal Charge, stated that Plaintiff was disabled due
2 to a knee injury, that Plaintiff informed his supervisor Mr. Velez of the work restrictions, that
3 Plaintiff felt he could become injured again if he was required to work the overnight shift that
4 required heavy lifting on September 22, 2011, and that following this conversation with Mr. Velez,
5 Mr. Velez told Plaintiff that he had to work the shift or would be written up. *Id.* These specific
6 allegations squarely raise Defendant's failure to accommodate claim.

If the Court were to hold the Charge alone deficient, Plaintiff could demonstrate a *prima
facie* case of agency negligence given that the details of the September 22, 2011 failure to
accommodate incident were included by Plaintiff in his Intake but omitted from the Charge prepared
by the EEOC. A plaintiff should not have to "rely to her detriment on her charge even if the EEOC
has distorted her claims when transferring allegations from an intake questionnaire onto the charge
form." *Maui Police Dept.,* 276 F.3d at 1102. Indeed, at the argument, Defendant could not come up
with a good reason why the EEOC would omit from the Charge Plaintiff's specific allegations
spelling out the failure to accommodate claim.

Accordingly, the Court denies summary judgment against the failure to accommodate and
failure to engage claims under the FEHA.

D.  <u>Plaintiff's Claims Asserted in Violation of the FEHA Remain to the Extent They Are
     Premised on the September 22, 2011 Failure to Accommodate Incident</u>

Defendant argues that Plaintiff's attempt to "intertwine" or "commingle" the race and
retaliation claims with the failure to accommodate claim should be disregarded. Def. Reply at 9-10
(Docket No. 85). Because Defendant does not take issue with the merits of each claim, specifically
stating its motion does "not seek judgment based on any causation argument," the Court need not
consider whether Plaintiff has raised a *prima facie* case on the merits of each claim arising under the

---

submissions, the Court **GRANTS** Plaintiff's request to file the supplemental declaration. The Court finds the supplemental declaration does not prejudice either party while also finding that it is not relevant to this motion. This order disposes of Docket No. 88.

10

1  FEHA.³  Reply at 10 n. 5.  The Court does find, however, that Plaintiff's remaining claims including
2  race discrimination (Count Four), retaliation (Count Five), failure to reasonably accommodate
3  Plaintiff's disability (Count Six), failure to engage in the interactive process (Count Seven), and
4  failure to take reasonable steps to prevent discrimination (Count Eight) are viable, separate unlawful
5  acts under the FEHA.  As cast by Plaintiff, these remaining claims all stem from the failure to
6  accommodate Plaintiff on September 22, 2011.  They differ only as to the alleged reasons for the
7  failure to accommodate, *e.g.*, was it motivated by race or retaliation?  *See* Compl. ¶ 13; *see* Cal.
8  Gov. Code §§ 12940(a), (h), (m), (n), and (k).

Accordingly, the Court denies summary judgment against these claims, Counts Four through Eight.

E. The *Ellerth / Faragher* and Avoidable Consequences Doctrines Do Not Apply

Defendant relies on the *Ellerth / Faragher* cases and California's avoidable consequences doctrines as a defense to liability to Plaintiff's remaining claims.

The *Ellerth / Faragher* doctrine based on *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), "is premised on the principle that an employer may escape liability for harassment by certain of its employees when it undertakes appropriate steps to remedy the situation." *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001).  It is a defense to vicarious liability.  As discussed in *Swinton*:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any [ ] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any

---

³ Although Defendant states that "Plaintiff fails to cite any precedent for the proposition that a failure to accommodate constitutes an adverse employment action for discrimination claims," the Court does not find this statement alone, unsupported by facts or law, a sufficient basis to assert summary judgment.  Reply at 9; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion.").  Defendant did not raise the issue in its motion.  It will not be considered here.

>preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . .

*Swinton,* 270 F.3d at 802 (citing *Faragher,* 524 U.S. at 806; *Ellerth*, 524 U.S. at 765 (citations omitted) (the language in *Faragher* and *Ellerth* cases are identical)).  The affirmative defense is <u>not</u> available when the "the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id.*

The Supreme Court established the doctrine "[i]n order to accommodate the agency principles of vicarious liability for harm caused by misuse of supervisory authority, as well as Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees." *Ellerth*, 524 U.S. at 764; *see also Faragher,* 524 U.S. at 807 (same).  While the doctrine has been applied to racial as well as sexual harassment, it applies only where the plaintiff seeks to establish vicarious liability.  *Swinton*, 270 F.3d at 802.

Defendants' reliance on *Ellerth / Faragher* is misplaced because Plaintiff does not assert a hostile work environment or harassment claim.  Even had Plaintiff stated such claims, the doctrines are inapplicable because Plaintiff alleges a tangible employment action, the failure to accommodate on September 22, 2011, as well as facts to establish that it was not unreasonable for Plaintiff to fail to take any additional preventive or corrective measures because it would likely have been futile.  Furthermore, as the only claims left in the case at bar are based on the FEHA, not Title VII or the ADA, only the California avoidable consequences doctrine may apply.

As to California law, the California Supreme Court found "to the extent the United States Supreme Court derived the *Ellerth / Faragher* defense from agency principles [ ] its reasoning is not applicable to the FEHA," because under California law, employers are subject to strict liability for all acts of sexual harassment.  *State Dep't of Health Servs. v. Superior Court*, 31 Cal. 4th 1026, 1041 (2003).  Thus, a special defense to vicarious liability is not at issue.  Instead, the California Court applies the common law avoidable consequences doctrine to actions asserted under the FEHA finding, "in a FEHA action against an employer for hostile environment sexual harassment by a supervisor, an employer may plead and prove a defense based on the avoidable consequences doctrine." *Id.* at 1044.  The avoidable consequences doctrine only allows an employer to escape

1  from liability for those damages that could have been prevented when three elements are established,
2  "(1) the employer took reasonable steps to prevent and correct workplace sexual harassment; (2) the
3  employee unreasonably failed to use the preventive and corrective measures that the employer
4  provided; and (3) reasonable use of the employer's procedures would have prevented at least some
5  of the harm that the employee suffered." *Id.* at 1044-45 ("We emphasize that the defense affects
6  damages, not liability.").

Under the avoidable consequences doctrine, viewing the facts in Plaintiff's favor, it was not unreasonable for Plaintiff in this case to fail to take additional measures to prevent liability because it would have been futile. According to Plaintiff, he alerted his supervisor, Mr. Velez, to his work restriction and indicated that he might be re-injured if he were forced to work the overnight shift and perform heavy lifting without a reasonable accommodation. *See* Baird Depo. at 96:12-17. Mr. Velez told Plaintiff that he would call a higher ranking manager, Mr. Frendo for advice. When Mr. Velez reported back to Plaintiff that "if you don't show up for your shift, you will be written up or fired for this," it was reasonable for the Plaintiff to believe that reporting the incident elsewhere, or taking other additional corrective measures, would have been futile. *Id.* at 110:7-9. On summary judgment, the facts and reasonable inferences therefrom must be viewed in Plaintiff's favor.

In sum, neither the *Ellerth / Faragher* nor the avoidable consequences doctrines warrants summary judgment.

### F.   No Common Law Claim for Violation of FEHA's Public Policy Exists

The Court finds no authority that supports a general common law claim for violation of FEHA's public policy. The only cases Plaintiff cites concern a claim for wrongful termination which Plaintiff does not allege. *See e.g. Stevenson v. Superior Court*, 16 Cal. 4th 880, 897 (1997) ("[W]e are persuaded that the FEHA's policy against age discrimination in employment is sufficiently substantial and fundamental to support a tort claim for wrongful discharge."); *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 178 (1980) ("[T]hus an employee who has suffered damages as a result of such discharge may maintain a tort action for wrongful discharge against the employer."); *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1158 (1998) ("[W]e hold that section 132a

1  does not provide an exclusive remedy and does not preclude an employee from pursuing FEHA and
2  common law wrongful discharge remedies.").

3  Accordingly, the Court enters judgment against Plaintiff as to Count Nine for violation of
4  FEHA's public policy.

5  G.  <u>Punitive Damages Cannot Be Asserted Against Mr. Velez, Mr. Frendo, and Ms. Hale</u>

6  Defendant argues summary judgment should be entered on Plaintiff's claim for punitive
7  damages because Plaintiff cannot demonstrate any officer, director, or managing agent who engaged
8  in or ratified an act of oppression, fraud, or malice. Defendant contends that Mr. Velez, Plaintiff's
9  direct supervisor, Mr. Frendo, Office Depot's Regional Director, and Ms. Hale, Office Depot's
10 previous Regional Human Resources Director, had no independent authority or judgment of
11 decisions that could affect corporate policies and were bound instead to follow Office Depot's
12 established corporate policies. Frendo Decl. in Support of Motion ¶ 3 (Docket No. 77); Ellis Decl.
13 in Support of Motion ¶¶ 3, 7 (Docket No. 76).

14 Cal. Civ. Code section 3294 allows for an award of punitive damages against an employer
15 when "clear and convincing evidence" demonstrates an officer, director, or managing agent of the
16 employer engaged in or ratified an act of oppression, fraud, or malice. *Looney v. Superior Court*, 16
17 Cal. App. 4th 521, 540 (1993). Managing agent includes "those corporate employees who exercise
18 substantial independent authority and judgment in their corporate decisionmaking so that their
19 decisions ultimately determine corporate policy." *White v. Ultramar, Inc*., 21 Cal. 4th 563, 566-67
20 (1999).

21 Plaintiff provides no facts to show how Mr. Velez, Mr. Frendo, or Ms. Hale were managing
22 agents of Office Depot. While Mr. Velez may have taken some part in the hiring and promotion at
23 the store, this does not demonstrate that he was an officer, director, or managing agent who could
24 determine "corporate policy." Velez Decl. in Support of Motion ¶ 6, Ex. A & B (Docket No. 78).
25 Similarly, Plaintiff provides no facts to show how Ms. Lori and Mr. Frendo were managing agents.
26 Plaintiff fails to demonstrate how these individuals "exercise substantial independent authority and
27 judgment in their corporate decisionmaking" and "ultimately determine corporate policy." *White,*
28 21 Cal. 4th at 566-67. Plaintiff cites to Mr. Frendo's declaration indicating he is one of eleven or

twelve regional directors in California; however, Mr. Frendo also states "I do not have independent authority to change Office Depot's corporate policies." Frendo Decl. ¶ 3. Plaintiff cites to "Hale's" declaration (¶ 7); however, it is likely that Plaintiff was referring to the Ellis' declaration as no Hale declaration was submitted to the Court. Ellis' declaration (¶ 7) affirmatively states "Ms. Hale did not have independent authority or judgment to make decisions regarding corporate policy."

Plaintiff offers no facts to the contrary. None support a finding that an officer, director, or managing agent here engaged in or ratified an act of oppression, fraud, or malice. Accordingly, the Court grants summary judgment against Plaintiff's claim for punitive damages.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Office Depot, Inc.'s, motion for summary judgment as to all federal claims under Title VII and the ADA, all claims based on a failure to promote, and the claim for punitive damages. The Court **DENIES** the motions as to Counts Four through Eight (under FEHA) to the extent they are premised on the September 22, 2011 failure to accommodate. The Court **GRANTS** the motion as to Count Nine.

This order disposes of Docket No. 73 and 88.

IT IS SO ORDERED.

Dated: June 4, 2014

_____
EDWARD M. CHEN
United States District Judge